Lahamoee, Judge,
delivered the opinion of the court:
Plaintiff a nonveteran, former civilian employee of the Navy Department, sues for wages lost due to removal for cause.
The facts as found by the Commissioner of this court are complete and will only be summarized here to the extent necessary. In connection with the facts, plaintiff has filed many exceptions and has proposed the addition of 82 findings. The proposed additional findings contain for the most part evidentiary matters and arguments seeking to sustain plaintiff’s position. After careful consideration of all the evidence, exceptions and request for additional findings, we adopt the report of the Commissioner.
Plaintiff says his removal was unlawful because (1) E,. E. Bassler exceeded his authority in effecting plaintiff’s removal; (2) the charges against plaintiff were not specific; (3) the evidence offered was insufficient to support the removal action; (4) the hearing board was not lawfully constituted and it failed to function according to law; (5) the notice of removal and the report of the hearing board failed to inform plaintiff the reasons for his removal; (6) the hearing board was not lawfully authorized to submit its report; (7) plaintiff was not furnished a copy of the report of said board; (8) defendant failed to observe the procedural requirements of the law, that is to say the Acts of Congress, the regulations of the Civil Service Commission, and the Navy Civilian Personnel Instructions in effecting plaintiff’s removal; and (9) plaintiff was denied “due process of law.”
However, the Commissioner has found and the record shows that there was full compliance with all regulations. The facts relative to plaintiff’s employment and removal are these:
In 1952 plaintiff was employed as a construction superintendent at the Naval Technical Training Center, Norman, Oklahoma.
*600 Coincidentally with, the notice of removal charges, plaintiff was notified by letter of his suspension for insubordination. This letter stated in part as follows:
Insubordination and failure to carry out assigned orders since being advised orally that charges proposing your removal were being preferred against you, which has caused, and will continue to cause undue embarrassment to your immediate supervisor, and to the Government through your relations with the general public.
In the same communication plaintiff was informed that he would be allowed 24 hours after its receipt in which to reply to the suspension provision. Suspension was effected pursuant to the “emergency suspension” provisions of Navy Civilian Personnel Instruction which provided:
5-6. EMERGENCY SUSPENSIONS.—
Actions taken under a and 5 below are distinguished from disciplinary suspensions levied as penalties. The following actions are taken to protect the employee, his fellow workers, the public or government property, or to assure an adequate and impartial investigation. In no case may an employee with permanent competitive status be immediately placed in a non-pay status without potential liability on the part of the activity for pay for that part of the non-pay period which was imposed in non-compliance with the requirements of law.
:Ji $ $ * *
b. Suspension pendi/ng inquiry or investigation.— Where, because of receipt of an adverse report or information seriously reflecting on an employee’s character or suitability, or for other comparable reasons it is necessary to suspend the employee indefinitely pending inquiry or investigation, one of the following steps will be taken:
/-|\ * * *
(2) Employees who have permanent competitive status will
(a) be furnished written notice of the proposed suspension and the reasons therefor;
(b) be allowed a reasonable time for replying thereto, with affidavits (in emergency cases not less than 24 hours); and
(c) be given a written decision on the proposed suspension.
*601 Plaintiff replied to the removal letter, and as a result thereof a new notice dated July 23, 1952, of proposed removal for cause was sent him. The new and specific notice sent plaintiff explained that upon receipt of plaintiff’s reply to the first set of charges “its contents were reviewed minutely and it was determined from your statements that you did not comprehend to the fullest extent the charges as presented. * * *” Therefore, the letter stated, the original set of charges “is hereby cancelled * * * and superseded by this communication for the purpose of listing in more specific detail the background and charges which constitute the basis for your removal.” The letter then set forth detailed charges upon which the proposed removal was based.
The letter of July 23,1952, stated that the suspension was in accordance with Navy Civilian Personnel Instruction 45.5-6, “as your retention in an active duty status would be detrimental to the Government” for the following reasons:
a. Insubordination and failure to carry out assigned orders since being advised orally that charges proposing your removal were to be preferred against you. Specifically, at Norman, Oklahoma, on 17 June 1952, while you were waiting for the contractor to start work on the contract to which you were assigned, Lieutenant Nolte asked you to check on the quantities in the specification on NOy-74431 which is a customary procedure prior to the bid opening to permit an addendum to be issued if necessary. You refused to perform the assignment and in the presence of the Assistant to the Resident Officer in Charge of Construction made the statement, “Someone will be sorry about fooling around with me.” Lieutenant Nolte asked you the direct question as to whether you were refusing tp handle the assignment, to which you replied “yes” and walked out of the office.
Plaintiff replied and a hearing was had before a civilian board consisting of three disinterested civilian members wherein plaintiff was represented by counsel. This was in accordance with NCPI Instruction 45.5-7. All three were men of experience, and plaintiff was represented by counsel who was advised of the right to the presence of witnesses in his behalf and of the right to confront witnesses against him. *602 The board which conducted the hearing was legally constituted and had authority to make the report.
Upon completing the hearing and after considering the evidence, in a unanimous report on August 25, 1952, the advisory hearing board reported to the District Public Works Officer that the charges against plaintiff had been sustained. Accordingly, plaintiff was removed from his position by the District Public Works Officer.
Plaintiff appealed his removal to the Under Secretary of the Navy pursuant to the appeal provisions of Navy Civilian Personnel Instruction. In the course of the appeal, it was reviewed, before being acted upon by the Under Secretary, five times as follows: (1) by a civilian representative of the Bureau of Yards and Docks; (2) by the civilian reviewer in the Office of the Chief of Industrial Relations; (3) by that reviewer’s superior, also a civilian; (4) by the head of the Employee-Management Relations, a civilian; and (5) by the Chief of Industrial Relations, a Rear Admiral. The removal action was sustained at each level of review and received final approval by the Under Secretary of the Navy on December 31,1952.
The letter notifying plaintiff of his removal also notified him of his right of appeal. In respect to the removal letter plaintiff complains that the notification did not state specifically why he was being removed. However, the removal letter referred to all the facts brought forth at the hearing before the Advisory Hearing Board, and the District Public Works Officer’s action sustained the recommendation of the Board. Direct reference to the charges as sustained was a sufficient statement of the reasons for the discharge. Green v. Baughman, 243 F. 2d 610. He did appeal, and as stated previously before final determination his case was reviewed five different times on both the merits and procedures. In respect to the latter, the facts show that “the record before the court contains no evidence that the reviews were not conducted in an objective and impartial manner.” Plaintiff was notified of the action by letter dated December 31,1952.
In conclusion, the record shows full compliance with all regulations and sustains the decision that the action of *603 the Navy Department in plaintiff’s removal and suspension was not arbitrary or capricious.
For the above reasons plaintiff’s petition will be dismissed.
It is so ordered.
LittletoN, Judge {Ret.); Madden, Judge; Whitaker, Judge, and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a former civilian employee of the Department of the Navy who was removed from his position for cause in 1952. At the time of his removal he was attached to, and his official duty station was, the Naval Air Technical Training Center, Norman, Oklahoma, which was a field office of the District Public Works Office of the Eighth Naval District, New Orleans, Louisiana. He is not a veteran of any war and is, therefore, not eligible for the benefits of the Veterans’ Preference Act. He held the position of construction superintendent, with a GS-9 classification under the Federal Civil Service.
2. By letter dated June 20,1952, plaintiff was given notice of his proposed removal from employment, to go into effect July 24, 1952, or 30 days from receipt of the letter, whichever was the later date. The notice was issued by Capt. R. E. Bassler, the District Public Works Officer, Eighth Naval District, New Orleans, Louisiana, who was in charge of the District Public Works Office. It recited several charges against plaintiff, and advised him that he would be allowed until June 30, 1952, or until 5 days after receipt of the letter, whichever occurred later, within which to reply to the charges. Plaintiff was also advised that upon request he would be granted a hearing in connection with the proposed removal.
3. The letter of June 20,1952, also notified plaintiff that, during the notice period, he would be carried in an annual leave status for the leave accrued and due, and in a leave-without-pay status for the remainder of the period. The letter stated in part that this action was being invoked under *604 the provisions of Navy Civilian Personnel Instruction 45.5-6, inasmuch as Ms “retention in an active duty status would be detrimental to the Government” based on the following:
Insubordination and failure to carry out assigned orders since being advised orally that charges proposing your removal were being preferred against you, which has caused, and will continue to cause undue embarrassment to your immediate supervisor, and to the Government through your relations with the general public.
In the same communication plaintiff was informed that he would be allowed 24 hours after its receipt in wMch to reply to the suspension provision.
4. Plaintiff, by letter dated June 24, 1952, acknowledged the notice of proposed removal and advised that he would make reply not later than June 30, 1952.
He also stated that it was Ms opinion that the suspension provision should not be invoked as the removal charges were not true.
5. By letter dated July 2,1952, the District Public Works Officer advised plaintiff that Ms letter of June 24, 1952, provided no satisfactory reason why the suspension should not be put into effect; that it would be put into effect, and that, for the period not covered by annual leave, 1:15 P.M. July 14, 1952, through July 24, 1952, he would be carried hi a leave-without-pay status.
The letter also advised that, pursuant to plaintiff’s prior request, the time in which he was to reply to the removal charges had been extended to July 1, 1952.
Plaintiff replied to the removal letter on July 1, 1952, as follows:
1. This is an answer and reply to notice of proposed removal dated 20 June 1952.
2. In reply to paragraph 2, I deny the validity of the charges that my work was unsatisfactory, and that at all time, in my capacity as Construction Superintendent, GS-9, my attitude was one of complete cooperation with my supervisors, contractors, and their representatives, and other personnel with whom I came in contact in performing my assigned duties. _
_ In reply to paragraph 2-a, it is admitted that I was appointed as Construction Superintendent, GS-9, in the District Public Works Office, Eighth Naval District, on *605 29 March 1951. That it was understood my job would take me on duty outside of New Orleans, Louisiana; that orders were issued to me to report to Corpus Christi, Texas; that I obeyed same, and upon reporting for duty at Corpus Christi, Texas, I was further assigned to duty at Naval Auxiliary Air Station, Kingsville, Texas; that I reported for duty at Kingsville, Texas, and was under the supervision of Lt. Gregor, United States Navy; that on 6 June 1951,1 was ordered back to New Orleans, Louisiana by Commander Bhinehart; that the statement contained in paragraph 2-a that I insisted on conferring with the Design and Construction Officer is untrue; that a conference between myself and Mr. Barnett was had, at which time it was fully explained that I was transferred from Kingsville, Texas because I had tried to perform my duties as a Construction Superintendent faithfully and honestly, and had refused to sign statements that twenty-two (22) man-date hours were performed on the grounds that I had seen only two (2) inspectors and six (6) laboratory men on the job when in reality there should have been more.
In reply to paragraph 2-b, the allegations are vague and misleading; that after the conference mentioned above Commander Gordon informed me that he was sending me to Dallas, Texas, and advised and ordered me to “get everything that is coming to the Navy.” That I reported to Commander Binkley in Dallas, Texas, and was told that Lt. Peterson would be my supervisor.
That my conduct while on duty at Dallas, Texas was at all times in strict accordance with the requirements of my job, and that at no time was there ever any disharmony between the contractor and myself; that in reality, I was separated from my job at Dallas, Texas for the reason that I tried to diligently perform my duties, and was met with opposition from the Officer in Charge.
On July 10, 1952, the District Public Works Officer notified plaintiff that a hearing would be held July 22, 1952.
6. On July 21, 1952, the District Public Works Officer wrote plaintiff, in pertinent part, as follows:
2. Confirming telephone conversation of 18 July 1952, this hearing is hereby suspended as it appears from statements contained in reference (b) [i.e., plaintiff’s letter of July 1, 1952] that you did not comprehend to the fullest extent the charges as presented. Accord *606 ingly, the hearing is suspended pending receipt by you of the charges in more specific detail and your reply thereto.
7. Under date of July 23, 1952, the District Public Works Officer sent plaintiff a new notice of proposed removal for cause. The letter explained that upon receipt of plaintiff’s reply to the first set of charges “* * * its contents were reviewed minutely and it was determined from your statements that you did not comprehend to the fullest extent the charges as presented. * * *” Therefore, the letter stated, the original set of charges “is hereby cancelled * * * and superseded by this communication for the purpose of listing in more specific detail the background and charges which constitute the basis for your removal.” The letter then set forth detailed charges upon which the proposed removal was based.
8. The letter of July 28, 1952, stated that the suspension was in accordance with Navy Civilian Personnel Instruction 45,5-6 (hereinafter quoted, in pertinent part, in Finding 38), “as your retention in an active duty status would be detrimental to the Government” for the following reasons:
a. Insubordination and failure to carry out assigned orders since being advised orally that charges proposing your removal were to be preferred against you. Specifically, at Norman, Oklahoma, on 17 June 1952, while you were waiting for the contractor to start work on the contract to which you were assigned, Lieutenant Nolte asked you to check on the quantities in the specification on NOy-74431 which is a customary procedure prior to the bid opening to permit an addendum to be issued if necessary. You refused to perform the assignment and in the presence of the Assistant to the Eesident Officer in Charge of Construction made the statement, “Someone will be sorry about fooling around with me.” . Lieutenant Nolte asked you the direct question as to whether you were refusing to handle the assignment, to which you replied “yes” and walked out of the office.
Plaintiff was again allowed 24 hours in which to reply to the second suspension provision.
9. Under date of July 28, 1952, plaintiff submitted his written reply to the second list of charges. He was notified that a hearing in the matter would be held August 4, *607 1952. By letter of August 6, 1952, plaintiff was advised that, in order to permit tbe bearing to be completed and to allow ample time for the hearing board to consider it and prepare its report, the effective date of his proposed removal was extended from August 6, 1952, to August 28,1952.
10. The hearing began August 4, 1952, and continued for five days. Plaintiff was represented by counsel at the hearing. The testimony given at the hearing was recorded and transcribed by stenographers who were employees of the Navy Department. They had access to machine recordings of the proceedings which were utilized in preparing the transcript. A copy of the transcript was furnished to plaintiff on August 26,1952. A copy of that transcript is in evidence in this action. An additional stenographer (trained as a court reporter) was also present at the hearing and took down and transcribed the Board proceedings. She was present at the specific request of Congressman James Morrison of Louisiana. Her transcript is also in evidence, together with a statement of the differences between the two records made.
11. The hearing was held before an Advisory Hearing Board, appointed by the District Public Works Officer pursuant to Navy Civilian Personnel Instructions, Instruction 45.[1] The Board consisted of three members. None of them was attached to the same department or division of the District Public Works Office as the plaintiff, and none of them had any direct connection with his work, but each member of the Board was subject to the supervision or administrative control of the Public Works Officer.
12. It is not established by the record that the Board which conducted the hearing on charges preferred against the plaintiff was illegally constituted or without authority to furnish an advisory opinion or make recommendations to the official vested with authority to approve or disapprove the proposed dismissal of plaintiff.
The commanding officer is responsible for the designation of a chairman of such board, and it is provided that the chairman cannot be a representative of the Central Indus *608 trial Relations Office. The only individual serving with such board who may be a representative from that office is the recorder, a nonvoting member.
13. Plaintiff was advised by an official of the Civil Service Commission that it was not authorized by law to intercede in his case and that his only remedy or redress was with the Navy Department, the courts, or Congress.
Applicable Civil Service regulations provide hearing for veterans only, unless the circumstances are such that a hearing is warranted because of some procedural defect in handling the case of a nonveteran. Plaintiff was informed that the Civil Service Commission was unable to give him any assistance with respect to restoration to his former position. At the time of the trial and as of the current date there is no Civil Service Regulation which provides for a hearing as a matter of right for nonveterans. The plaintiff has not established that he is entitled to veteran’s preference.
14. It is established by the transcript of the board proceedings that the Chairman permitted and at times suggested or directed Mr. Bowles, the recorder, a nonvoting member of the Board, to examine witnesses, particularly the plaintiff. That function he pursued with vigor and his method of procedure reflected some characteristics of an attorney for the prosecution. But he took no part in the deliberations of the Board, its findings or recommendations.
15. On August 25,1952, in a unanimous written report, the Advisory Hearing Board reported to the District Public Works Officer that the charges against plaintiff set forth in the letter of charges of July 23, 1952, had been sustained, with minor exceptions not affecting the validity or gravity of the charges; that his performance of his duties was, in fact, unsatisfactory; that his continued presence as a Government representative at the site of work would be detrimental to the best interests of the Government; and that just cause existed for his removal from the position he held.
16. Plaintiff was removed from his position by the District Public Works Officer, effective August 28, 1952. His letter to the plaintiff, dated August 26, 1952, advised plaintiff, in pertinent part, as follows:
*609 8. After careful review and evaluation of all facts brought forth at. the hearing and considering the recommendation made by the Advisory Hearing Board, it is the decision of the District Public Works Officer that you be removed from the rolls of the District Public Works Office effective close of business 28 August 1952. 4. You are advised of your right to appeal this decision to the Under Secretary of the Navy via the District Public Works Officer, Building 16, U.S. Naval Station, New Orleans, Louisiana, and the Chief of the Bureau of Yards and Docks, Navy Department, Washington, D.C., within ten (10) working days of removal.
17. Under Navy procedures, an employee appeal-from-removal action is forwarded to the Under Secretary of the Navy through the Bureau of the Navy Department having control over the officer who took the removal action, for its review and recommendation. In the instant case, this Bureau was the Bureau of Yards and Docks, as it had authority over the District Public Works Officer who ordered the removal. In this Bureau the review was performed by the head of the Employment Section, a Mr. William H. Boyle. He reviewed it, both procedurally and on the merits, and concurred in the removal action. He prepared the Bureau’s forwarding endorsement, recommending that the removal action be sustained, and the case was forwarded to the Under Secretary of the Navy.
18. Within the office of the Under Secretary of the Navy the appeal was handled by the Chief of Industrial Belations, Rear Admiral George A. Holderness, Jr., and his staff. Upon being received by Admiral Holderness, it was first assigned to a civilian reviewer, a Mr. Wilfred J. Mathewson. The complete appeal file was furnished him and he made a review of the entire case. He first reviewed the procedural aspects of the case, and, having found no procedural defect, reviewed it on the merits. He then drafted a summation of the evidence presented by each side, findings, and a recommended conclusion, namely, that the removal action be sustained. He then forwarded the complete record to his supervisor, a Mr. Robert L. Bolton. Mr. Bolton reviewed Mr. Mathewson’s findings and recommendation in the light of the evidence of record. He concurred in the recommendation that the removal action be sustained.
*610 19. The case was then forwarded to the head of the Employee-Management Relations Branch of the Office of Industrial Relations, Mr. Francis E. Raterman. He reviewed the complete record, including the recommendations of Mr. Mathewson and Mr. Bolton. He found that the removal was procedurally correct and justified. Based on his review, he recommended to Admiral Holderness, Chief of Industrial Relations, that the removal action be sustained.
20. After the above described review actions, the case was returned to Admiral Holderness for final review and recommendation to the Under Secretary of the Navy. Admiral Holderness reviewed the record, concurred in the recommendations of his subordinates, and recommended to the Under Secretary that the removal action be sustained.
21. The case file, complete with all recommendations, was then forwarded to the Under Secretary of the Navy, Mr. Francis P. Whitehair, who sustained the removal action. By letter dated December 31, 1952, Mr. Whitehair advised plaintiff of the action he had taken.
22. After the case had reached the office of the Chief of Industrial Relations for review, plaintiff submitted one item of additional evidence. At the original hearing plaintiff had provided a reporter, in addition to the Navy stenographers who prepared the official transcript for the Board. Plaintiff forwarded a copy of this additional transcript to the office of the Under Secretary of the Navy for consideration in connection with his appeal, contending that the official Navy transcript was not adequate. Mr. Raterman caused a page-by-page comparison to be made by Mr. Mathewson. Mr. Mathewson found that there were some differences between the two transcripts but none of any material significance. The page-by-page analysis which he made was added to the case file at that juncture, and is in evidence in this suit.
The additional transcript, prepared at the instance of Congressman Morrison, now in evidence, also has attached thereto a comparison of the two separate transcripts.
23. By letter dated October 24, 1952, the District Public Works Officer, New Orleans, Louisiana, forwarded to the Assistant Chief for Management and the Comptroller, Bu *611 reau of Yards and Docks, Navy Department, Washington, D.C., certain documents relative to plaintiff’s discharge which were not part of the record before the Board which conducted the hearing. A substantial portion of this data consisted of letters from contractors of projects to which plaintiff had been assigned as an inspector, containing derogatory information about the manner in which plaintiff performed his duties. This letter of transmittal, labeled “Confidential and Personal,” explained — and the writer of the letter, who was not a lawyer, so testified at the trial of this case — that plaintiff had threatened to sue the contractors and the District Public Works Officer if the letters attached thereto were used at the hearing, and, for that reason, they were not introduced at the hearing but were being forwarded in this manner. The letter was placed in the files of the Bureau of Yards and Docks and, according to defendant’s proof, it was never sent to the Chief of Industrial Relations. Admiral Holderness, Mr. Raterman, Mr. Bolton, and Mr. Mathewson, who reviewed the case for the Under Secretary of the Navy, all testified individually at the trial that they had never seen the letter until it was shown to them prior to appearing as witnesses in this lawsuit.
24. As previously noted (Finding 1), plaintiff was employed at the Naval Air Technical Training Center, Norman, Oklahoma, at the time the removal action was initiated. Plaintiff held greater retention rights than the other employees at this establishment in plaintiff’s employment retention category. In 1952 and 1953 a reduction in force in the number of employees at this station took place, and by July 22, 1953, there were no civilians employed there. Accordingly, defendant contends that, although by virtue of his retention status plaintiff would have been the last employee in his category to be discharged because of reduction in force, nevertheless, he would have been reached for discharge for that reason not later than July 22, 1953, by this reduction in force.
25. The second notice concerning proposed removal set forth in detail the charges against plaintiff. Each charge was separately designated, and descriptive, delineating data was given for each charge. For example, one category of *612 charges was that plaintiff had made false or unfounded statements which reflected unfavorably on the honesty, integrity, and efficiency of his supervisors. The notice set forth such statements of plaintiff, followed by facts and data cited for the purpose of showing the falsity of, or lack of a proper basis for, plaintiff’s statements. Another charge was that plaintiff’s careless and negligent workmanship resulted in delay. Following this charge there were set forth, in separately numbered paragraphs, the date, place, and occasion of each example of poor workmanship cited.
26. The administrative hearing accorded plaintiff was before an Advisory Hearing Board, composed, as previously noted, of three persons whose official duties and assignments were separate and apart from those of the plaintiff, and a nonvoting recorder. Plaintiff was in the Construction Division, whereas the members of the Board, as shown in subsequent findings, were in the Design, Eeal Estate, and Administrative Management Divisions. They had had no previous contact with plaintiff or his work assignment.
27. The Chairman of the Advisory Hearing Board, Mr. W. E. Stinchcum, was a civil engineer who held an engineering degree from Tale and had taken graduate work at Brooklyn Polytechnic Institute. At the time of the administrative hearing on plaintiff’s removal, he had had about 24 years of engineering experience and held the position of Director of the Design Division, Eighth Naval District, New Orleans, Louisiana. He had also had substantial experience in handling employee removal hearings, having served as a hearing officer in a number of such removals while employed at the New York Navy Yards. He had never met plaintiff prior to the hearing and had no connection with his proposed removal prior to being appointed to conduct the hearing.
28. The other two members of the Board were Mr. Alfred J. Anderson and Mr. J. W. Fondiller. Mr. Anderson was Manager of the Eeal Estate Branch of the Property Division. Mr. Fondiller, a man of about 20 years’ service in the Government, was Director of the Administrative Management Division. No military officers were assigned to membership on the Board.
*613 29. The Chairman advised plaintiff’s attorney of plaintiff’s right to confront the witnesses against him, and that, if plaintiff desired any Navy personnel as witnesses, the Chairman would insure their presence for that purpose.
30= At the hearing plaintiff’s counsel agreed to rely upon the Navy transcript and advised the Chairman of the Advisory Hearing Board that the extra reporter was not present for the purpose of making a transcript of the hearing, but for counsel’s use in making notes. She did, however, make a complete transcript of the Board proceedings, as requested by Congressman Morrison prior to the time the hearing began.
After hearing all the testimony plaintiff desired to offer, the Board called various other persons who testified with reference to the subject matter of the removal charges.
31. During plaintiff’s testimony he stated that those in charge of various construction projects to which he had been assigned as an inspector, his superior officers or supervisors, failed to cooperate with him or support his findings that the work was not being performed in accordance with specifications.
Following plaintiff’s testimony, officials or employees of the defendant who were implicated or involved in plaintiff’s charges of irregularities, and failure to assist him in doing his job, were called and testified concerning plaintiff’s conduct on the job and elsewhere. Many leading questions were asked these witnesses by the Board Chairman and the recorder after they had been told about the prior charges or unfavorable testimony against Cowan.
32. The manner of conducting the Board hearing was strongly criticized by plaintiff’s attorney, citing the procedure followed in taking the testimony of Lieutenant Peterson, plaintiff’s supervisor at Dallas, Texas, as an example.
Lieutenant Peterson appeared, as requested by the Board, on August 6, 1952. He clearly indicated at that time that, other than what he had heard after he arrived at the hearing on that date, he knew nothing about the case which was before the Board. He said:
* * * I don’t know anything at all about these charges or the nature of the complaints against Mr. Cowan at Kingsville, Corpus Christi, Dallas, Norman or New Or *614 leans. I know nothing about that whatsoever. In other words I don’t know what you are trying to prove. * * *
Following that statement by Lieutenant Peterson, the Chairman of the Board said:
Lt. Peterson, I will show you the charges against Mr. Cowan as concerns the work at Dallas. This is indicated on Page 3, starting at Paragraph A-2 and running to page 5 all of sub-paragraph C and including paragraph C on Page 6 relating to his deliberate refusal to carry out orders. Lt. Peterson has completed the reading of the charges as briefly outlined and as pertains to Mr. Cowan’s work and relationship at Dallas. * * *
The Board was then adjourned on August 6, 1952, to reconvene on August 12,1952. When the hearing reconvened, Lieutenant Peterson, having been previously furnished a copy of the charges against Mr. Cowan and having reviewed the oral testimony of Cowan during the interim period of several days, again took the stand and testified at length, beginning with the following statement:
In trying to arrive at a rebuttal of certain allegations and inferences made by Mr. Cowan in his verbal testimony to this group some time in the past, let’s say, a week or ten days, it is best I think to go back and work it from the beginning. My avowed purpose this morning in testifying before you is to bring you information that I believe are facts.
Later in his testimony Lieutenant Peterson stated:
Gentlemen, in my entire approach to this matter, I have taken the charges against Mr. Cowan from Naval Air Station, Dallas, and attempted to analyze them at the same time I shall attempt to prove basically the charges made against him. We can go about this thing any way you want to.
Lieutenant Peterson’s testimony concerning who was the superintendent of the job at Dallas was incorrect, as finally brought out by the Chairman of the Board and as shown by reports signed by W. C. Barnard as superintendent.
33. Following completion of the hearing, the transcript was prepared and a copy furnished to each member of the Board. After each Board member had read the transcript, a meeting of the members was held, at which time they dis *615 cussed the charges and the evidence relating to such charges. A report was drafted holding that, with certain exceptions, the charges were supported by the evidence. A copy of this report is in evidence. In reaching their decision, the Board considered the record before it, consisting of the transcript of the oral testimony and the exhibits which were made a part of the record during the Board hearing.
34. The consideration accorded plaintiff’s case in the office of the Under Secretary of the Navy, Washington, D.C., consisted of separate reviews of the procedural aspects and the merits of the removal action by individual members of the staff of that office before final action was taken by the Under Secretary. These reviews were performed by three civilians and one naval officer, a Bear Admiral, and each of them reached the conclusion that the removal action of the District Public Works Officer, Eighth Naval District, New Orleans, Louisiana, should be sustained. The record before the Court contains no evidence that the reviews were not conducted in an objective and impartial manner.
35. At the conclusion of the hearing before the Advisory Hearing Board, plaintiff’s former attorney made the following statement:
* * * To conclude, I would like to thank the Board for its courteous attitude, its many courtesies shown in the past five days. I realize that it has been a trying affair for all of us and I’d like to compliment the Chairman and members of the Board for their excellent demeanor and the excellent way in which they tried to arrive at the facts.
He did testify at the trial, however, to the effect that, because of the manner in which the hearing was conducted, and the procedure followed in having the proof presented, the plaintiff did not receive fair and impartial treatment at the hearing. The basic reasons for plaintiff’s claim of unwarranted and arbitrary action against him can be summarized as follows:
(1) Captain Bassler, the District Public Works Officer, preferred the charges; his subordinates were members of the Board and made findings of fact; and Captain Bassler dismissed the plaintiff.
*616 (2) Captain Bassler served one set of charges on plaintiff, required him to answer them and to submit the names of prospective witnesses to be used by plaintiff, and set a hearing date. After plaintiff had responded to the original charges and furnished names of witnesses whom he expected to use, the charges were cancelled, and a new set of charges prepared and served on him.
(3) Hie reason defendant gave for such action was that plaintiff did not fully comprehend the initial charges. During the trial of this action both plaintiff and his former attorney testified that they understood the charges and were able to answer them.
36. Congressman James Morrison, member of the Post Office and Civil Service Committee, House of Kepresentatives, who had known plaintiff for many years and was familiar with his employment record and pending dismissal from federal service, attended, for one day, the hearing held by the Board in connection with charges preferred against plaintiff. Based upon his observation while present at the hearing, and other information which had come to his attention, the Congressman testified at the trial of this suit that, in his opinion, plaintiff did not get a fair hearing before the Board. This opinion was based on the procedure followed in preparing two sets of charges and the manner of conducting the hearing. He received the impression that it had been previously decided to dismiss plaintiff and the hearing was arranged for technical compliance with the regulation which provided for a hearing when requested by the employee involved.
37. There are no major discrepancies concerning matters of substance between the official transcript of the Board hearing prepared by the Navy stenographers and the transcript prepared by plaintiff’s court reporter. The differences which are reflected by a review of the two transcripts are not found to be of such importance or significance as to invalidate any pertinent portion of the record made at the hearing.
38. Navy Civilian Personnel Instructions, Instruction 45, sets forth certain naval regulations, applicable to disciplinary actions, removals, and prohibitions. The full text of the regulation in effect at the time of plaintiff’s removal is in evidence. Pertinent portions of it are quoted as follows:
*617 5-1. GENERAL STATEMENT.—
Whenever disciplinary action is required looking toward suspension, demotion, reduction in pay or grade, or removal for cause involving delinquency, misconduct or unsatisfactory services, the following procedures will be followed. (For warnings see NCPI 45.3-3e; for native and alien non-citizen employees see NCPI 45.2-1.) Such action should be initiated only after preliminary inquiry or investigation indicates that it is necessary for the efficiency of the service and to correct the employee and maintain general discipline and morale. Line supervision is responsible for taking all required disciplinary action. Subordinate levels of supervision are responsible for recommending action when appropriate.
* * * % sü
5-3. PROCEDURE “B.”
a. Coverage. — -Applicable to employees who:
(1)are permanent or indefinite appointees * * *
‡ ‡ $
h. Advance notice, charges and employees’ rights and privileges. — -An advance notice (usually five work days) will be submitted to the employee advising him of:
(1) The proposed action and its natwre.
(2) Specific charges including any and all reasons for the proposed adverse action, specifically and in detail, including -the dates, specific instances, and other data sufficient to enable the employee to fully understand the charges and to adequately join issue with the proposed action. * * *
(3) Employee's right to reply — that he has a right to reply in writing to the charges within a reasonable period of time (usuany five work days).
(4) The date hy which his reply must he made.
(5) Employee's right to furnish afpda/oits in support of his answers.
(6) Employee's Hght to hearmg — that he will be granted a hearing upon request and may have a representative and witnesses (hearings shall be conducted in accordance with NCPI 45.5-7). A verbatim record of the testimony taken in such hearings will be made, where practicable, and made a part of the case record and filed with the activity. Otherwise, a summary covering each person’s testimony will be prepared. *618 A copy of the record or summary will be given to the employee upon his request.
(7) The work or leave status in which he will he carried du,ring the period of notice. — Normally the employee will be continued in an active duty status. Where not considered advisable to retain him in an active duty status, he may be placed on annual leave without his consent. In unusual cases, where the retention of the employee in an active duty status in his position during the notice period may result in damage to Government property, would be otherwise detrimental to the interest of the Government, or would be injurious to the employee, his fellow workers, or the general public, the employee may be:
(a) Temporarily assigned to duties in which these conditions would not exist,
(5) Placed on leave without pay with his own consent, or
(c) Suspended under procedures of NCPI 45.5-6.
c. Final decision. — Following the foregoing procedure, and after consideration of the reply, if made, and any hearing held, the employee will be notified in writing of the final decision and its effective date. The decision shall cite the notice of proposed action and state the length of any reckoning period imposed, with notice that a repetition of the same offense during such period will result in a heavier penalty. In demotion and removal cases a notice of final decision will be delivered to the employee prior to the effective date of the adverse action.
d. Bight to appeal. — The employee, in case of demotion or other penalty action short of removal shall be advised in the final decision notice of his right to appeal through the grievance procedure, and in case of removal shall be advised of his right to appeal to the Under Secretary of the Navy via the head of the activity and the management bureau or office within ten (10) working days. * * *
ft ft ft ft ft
5-6. EMEEGENCY SUSPENSIONS.—
Actions taken under a and h below are distinguished from disciplinary suspensions levied as penalties. The following actions are taken to protect the employee, his *619 fellow workers, the public or government property, or to assure an adequate and impartial investigation. In no case may an employee with permanent competitive status be immediately placed in a non-pay status without potential liability on the part of the activity for pay for that part of the non-pay period which was imposed in non-compliance with the requirements of law.
❖ * # ‡
b. Suspension pending inguiry or investigation.— Where, because of receipt of an adverse report or information seriously reflecting on an employee’s character or suitability, or for other comparable reasons it is necessary to suspend the employee indefinitely pending inquiry or investigation, one of the following steps will be taken:
/]\ * * *
(2) Employees who have permanent competitive status will
(a) be furnished written notice of the proposed suspension and the reasons therefor;
(b) be allowed a reasonable time for replying thereto, with affidavits (in emergency cases not less than 24 hours); and
(c) be given a written decision on the proposed suspension.
* * * * *
5-7. HEARINGS.
a. Purpose. — Hearings in disciplinary action cases are conducted solely for the purpose of obtaining facts on which an equitable decision may be based and to give the employee an opportunity to present his side of the case. Hearings are not conducted for the purpose of affirming the charges and prosecuting the employee but rather for the purpose of investigating the charges and determining the necessity for the proposed action.
b. General conditions. — Hearings in accordance with these provisions will be held whenever action is taken under Procedure “B” or “C” and the employee requests such hearing in his reply to charges. Hearings may be held, in the discretion of management, when the employee fails to request such hearing if it is believed that hearing the case will lead to a better understanding of the issues and more equitable action. Hearings, when requested, should be scheduled as promptly as possible. *620 Hearings will be conducted by the line supervisor authorized to take the action in question? or by another line supervisor designated to act for him. Where desirable, an advisory hearing board may be designated with one member acting as chairman. Shop Personnel Supervisors and officials of the Industrial Relations Departments or Civilian Personnel Offices may not serve as voting members on such boards.
c. Employee representatives. — The employee may be accompanied and represented by one person in disciplinary action cases covered by Procedure “B” or “C” as follows:
(1) In suspension and demotion cases, he may be represented by a fellow employee.
(2) In removal cases, he may be represented by any person of his choice who desires to represent him.
d. Witnesses. — The employee may call on witnesses who have direct knowledge of circumstances and factors bearing on the case. Such employee witnesses named by the employee are required to attend to testify. Witnesses may be limited in number on the basis of fair standards which shall be explained to the employee and recorded, and normally shall be present at the hearing only while testifying.
e. Conducting the hearing. — In hearing cases covered by Procedure “B” or “C” the following standards and procedures shall be observed:
(1) The employee shall be advised of the purpose of the hearing and of his right to representation and to call witnesses in his behalf as described in a, e, and d above.
(2) He shall be advised of the charges and of the contemplated penalty. The evidence in support of the charges will then be introduced. The evidence may be in the form of testimony of witnesses and participants and introduction of pertinent documents, materials and equipment. Where necessary, affidavits or depositions may be used, with the employee being allowed a reasonable time in which to obtain counter affidavits or depositions. Charges do not constitute evidence. Classified files may furnish valuable leads and. result in the securing of proper and admissible evidence, but they may. not be considered in determining guilt, innocence, or the penalty, unless the in *621 formation contained therein or evidence obtained therefrom is made a part of the record and the employee is given fair opportunity to reply thereto. This means that Before the information contained in classified files may be used in these hearings, the equivalent evidence in an unclassified form must be obtained and presented at the hearing.
(3) He shall be given full opportunity to reply to and refute the evidence and charges against him and to question all witnesses at the hearing.
(4) Witnesses shall be called individually, advised of the purpose of the hearing, cautioned to remain as factual as possible in their testimony, assured that no discrimination will result from their testimony, and advised that their testimony should not be discussed outside the hearing.
(5) The hearing officer shall make every effort to elicit all of the facts bearing on the case whether those facts support the charges or support the employee’s position; to confront the employee with the witnesses against him if that is the employee’s desire; to assure the employee’s full understanding of all phases of the matter; and to confine the discussion and testimony to issues directly related to the case.
(6) Hearings are purely administrative proceedings for the purpose of reviewing and evaluating evidence, finding the facts, and making recommendations when so requested. They are not courts nor are they governed by legal rules of procedure and evidence. They are held in order to develop all pertinent facts.
/. Hearing records. — Where practicable verbatim transcripts of hearings under Procedure “B” or “C” will be made; otherwise, each person’s testimony shall be summarized for the record. A copy of the hearing record shall be given to the employee upon request.
*****
5-8. APPEALS.
^ $ * Hi ‡
b. Removals for cause. — Appeals from removal effected under Procedure “B” or “C” may be made to the Under Secretary of the Navy, via the head of the activity, within 10 days of the effective date of the action. Activities will promptly forward such appeals to the *622 Under Secretary, QIR Code 215, via the Bureau, Office or Service having management control, together with appropriate comment, all records pertaining to the case, and the appellant’s personnel folder. No provision is made for a personal hearing in the Department in connection with such appeals. ¡Review of the action is based on the record alone and it is imperative that a complete picture of the circumstances in the case be provided the Department. Consequently, the activity should review the record prior to submission to the Department in order that comment regarding unrefuted statements of the appellant, activity’s basis for discounting the testimony of any witnesses, unusual circumstances which required the action taken, etc., may be included in the forwarding endorsement. Failure to do so may result in the improper sustaining of an appeal. A copy of the forwarding endorsement should be provided the appellant.
?1) Action may be taken by the responsible Bureau, Office, or Service to reverse the removal action taken by an activity under its management control. When action satisfactory to the appellant is thus taken, the Under Secretary, OIR Code 220, will be informed. When corrective action is not taken by the Bureau or Office concerned the appeal will be forwarded promptly for adjudication by the Under Secretary.
39. Plaintiff has considerable ability and experience as an inspector of construction work of various kinds. However, the record in this action is deemed adequate to establish that plaintiff, over a considerable period of time at several naval stations, had difficulty in working with Navy and contract personnel. He made complaints and expressed dissatisfaction about various things done or procedure followed, in the form of criticism of others. At times he was unwilling to accept advice or instruction from his superiors on a job or from others who had more training and experience. On the other hand, plaintiff did, from time to time, accept the decisions of superiors in connection with certain construction projects and follow them, even though he did not agree with such decisions.
It is established that, on one occasion, after he had been informed orally of charges proposing his dismissal, plaintiff refused to do a job assigned to him by his superior officer. Two contractors, C. H. Monroe Company and Builders *623 Construction Company, complained to Lieutenant Nolte, the resident officer in charge of construction at Norman, Oklahoma, concerning the actions or attitude of Cowan, who was inspector on their work. Instead of taking questions or problems to the superintendent of the job or the resident officer in charge, Cowan would sometimes give instructions directly to the mechanic or carpenter who was doing the work.
40. Plaintiff became a Civil Service employee on May 27, 1941, at a salary of $1,680 per annum. He was never given an unsatisfactory efficiency or performance rating during the period from date of original appointment to the date charges were preferred against him in 1952. His salary at the time of his dismissal from employment was $5,185. On July 23,1957, plaintiff was again employed by the defendant on a temporary basis as a construction inspector at a salary of $4,975 per annum. His name had been previously carried on the Civil Service eligible register. The Notification of Personnel Action with respect to this most recent federal employment carried the following additional statement “Previously employed at the equivalent of $5,575 per annum as Construction Superintendent, GS-1640-9, with Navy Department.” This work with the Coast Guard, by which he was employed before he worked for the Navy, was for a period of six months, after which assignment plaintiff was commended for having done a good job.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition therefore is dismissed.

 These regulations, referred to as NCPI-45, are in evidence as Defendant’s Exhibit 9. Pertinent portions are set forth In Finding 38.